83906/5

STATE OF INDIANA        )                    VIGO _____ COURT
                              ) SS:
COUNTY OF VIGO         )                    CAUSE NO. **84D03-1703-PL** 2478

STAPLES THE OFFICE SUPERSTORE     )
EAST, INC.                               )

       Plaintiff,                        )

vs.                                   )

ZURICH AMERICAN INSURANCE      )
COMPANY and JAMES B. BOGARD,   )

       Defendants.                    )

**FILED**
VIGO COUNTY SUPERIOR COURT

MAR 31 2017

*[signature]*
CLERK

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Staples the Office Superstore East, Inc. ("Staples"), by counsel, Scott A. Weathers and Kopka Pinkus Dolin PC, for its Complaint for Declaratory Judgment, states as follows:

### Count I – Duty to Defend

1.     Staples is a Delaware corporation doing business in the State of Indiana and having its principal place of business in Massachusetts.

2.     Defendant, Zurich American Insurance Company ("Zurich"), is a foreign insurance company doing business in the State of Indiana.

3.     Defendant, James B. Bogard, is a citizen of Indiana and the personal injury plaintiff in an underlying tort suit pending in the Vigo Superior Court under cause no. 84D06-1408-CT-6424. Mr. Bogard is a necessary party to this declaratory judgment action because the insurance issues affect his injury claim.

4.      Mr. Bogard alleges that on May 8, 2014, he was injured unloading a truck packed with Staples goods.  The truck was operated by Mr. Bogard's employer, NFI Interactive Logistics, LLC ("NFI").  A copy of Bogard's Complaint is attached as <u>Exhibit "A"</u>.

5.      On or about May 12, 2011, Staples and NFI entered into a Dedicated Agreement for Transportation Services (the "Agreement"), pursuant to which NFI agreed to furnish transportation services.  A true and accurate copy of the Agreement is attached as <u>Exhibit "B"</u>.

6.      The Agreement was in full force and effect on the date of the occurrence, May 8, 2014.

7.      Pursuant to the Agreement, NFI agreed to procure insurance naming Staples, Inc. as an additional insured on various types of insurance including general liability for bodily injury on a primary and non-contributory basis. (Ex. "B", pp. 6-7, para. 14).

8.      NFI procured general liability insurance through Zurich.  A copy of the Certificate of Liability Insurance is attached as <u>Exhibit "C"</u>.

9.      Staples the Office Superstore East, Inc. is a corporation affiliated with Staples, Inc.

10.     The Certificate of Insurance states, "STAPLES, Inc., and its subsidiaries and affiliates are included as an Additional Insured on the Automobile and General Liability policies, where required by written contract or agreement." (Ex. "C").

11.     Bogard's claims are, at least in part, the result of acts or omissions of NFI (the Named Insured on the Zurich policy) since Paragraph 7 of the Agreement imposes a duty of "load security" on NFI. (Ex. "B", p. 4, para. 7).

12.     Staples, through its agent, sent correspondence to Zurich, placing Zurich on notice of the claim.

2

13.     Staples, by counsel, subsequently sent correspondence to Zurich and demanded that Zurich accept its tender of defense and provide Staples with copies of Zurich policies.  The attached Exhibit "D" contains a May 17, 2016 tender of defense correspondence with an accompanying Certificate of Insurance and a file-stamped copy of the Answer (with Affirmative Defenses and Jury Demand) in the underlying injury action.

14.     Despite the above request, Zurich has never provided Staples with the insurance policies on which Staples is named as an Additional Insured (policy no. GLO913955607 with effective dates of October 1, 2013 to October 1, 2014).

15.     On January 25, 2017, Staples' agent sent correspondence to Zurich reiterating the tender of defense. (Exhibit "E").

16.     To date, Zurich has refused to defend and indemnify Staples.

17.     Due to Zurich's refusal to defend Staples in this action, Staples has incurred costs and attorneys' fees to appear and defend Staples in this action, and will continue to incur such costs in the future.

18.     Zurich's refusal to defend and indemnify Staples in this matter is a breach of the insurance policy.

19.     Staples requests that the Court determine Staples' rights concerning the duties owed by Zurich, pursuant to the insurance policy.

20.     A determination of this obligation will save time, costs, and attorneys' fees.

21.     An actual and justiciable controversy exists between Staples and Zurich regarding Zurich's obligations to Staples in connection with the claims asserted in Bogard's Complaint.

22.     Under the circumstances alleged, a judicial determination of the rights and obligations of the parties under the insurance policy referenced above is necessary at this time in

3

order to terminate any uncertainty with regard to the issues of coverage and defense described above.

WHEREFORE, Plaintiff, Staples the Office Superstore East, Inc., seeks a judicial determination and declaration of Zurich's obligations pursuant to the insurance policy, and respectfully requests that this honorable Court order Zurich to defend Staples with respect to expenses incurred during the investigation, defense, and litigation of Bogard's action, to reimburse Staples for those expenses already incurred in the during the investigation, defense, and litigation of Bogard's action, and for all other relief that is just and proper in the premises.

### Count II – Duty to Indemnify

1-22. Plaintiff realleges and adopts Paragraphs 1 through 22 of Count I, as and for Paragraphs 1 through 22 of Count II, as though fully set forth herein.

23.   Pursuant to the terms of its insurance policy, Zurich has an obligation to indemnify Staples in regard to the aforesaid Bogard litigation.

24.   Should Bogard be awarded damages from Staples, such damages should be paid by Zurich pursuant to the insurance policy.

WHEREFORE, Plaintiff, Staples the Office Superstore East, Inc., seeks a judicial determination and declaration of Zurich's obligations pursuant to the insurance policy, and respectfully requests that this honorable Court order Zurich to indemnify Staples for all liability in regard to Bogard's action, and for all other relief that is just and proper in the premises.

4

Respectfully submitted,

KOPKA PINKUS DOLIN PC

*Randall W. Graff*
_____
Randall W. Graff, #22651-45
Attorney for Plaintiff, Staples, Inc.

Randall W. Graff
KOPKA PINKUS DOLIN PC
550 Congressional Blvd., Suite 310
Carmel, IN  46032
Tel:    (317) 818-1360
Fax:    (317) 818-1390
saweathers@kopkalaw.com

STATE OF INDIANA
VIGO SUPERIOR COURT

**FILED**

VIGO SUPERIOR COURT

AUG 1 3 2014

*David R Crischon*
CLERK

JAMES B. BOGARD,

    Plaintiff,

    vs.               CAUSE NO.:

STAPLES THE OFFICE
SUPERSTORE EAST, INC.,    84D06 - 1408 - CT - 6424

    Defendant.

## COMPLAINT

    Comes now Plaintiff, James B. Bogard, by counsel, and for his statement of claim against Defendant says:

    1. On May 8, 2014, Plaintiff was employed as an over the road commercial truck driver and had received a truck load of goods from Defendant's Staples Distribution Center in Terre Haute, Vigo County, Indiana.

    2. On May 8, 2014, agents, servants or employees of Defendant negligently and carelessly loaded an individual carton and tote on top of a properly packaged and secured pallet of Staples goods.

    3. On May 8, 2014, the negligently loaded carton and tote fell from atop the pallet striking Plaintiff on the head and shoulders causing Plaintiff to be hurt, injured and impaired all to his detriment and damage.

    4. That Defendant loaded said carton and tote with callous and utter indifference to Plaintiff's health and well being knowing or having reason to know that by doing so someone would likely be injured.

    WHEREFORE, Plaintiff prays for judgment against Defendant in such an amount as will fully and fairly compensate him for his injuries, losses and damages, prejudgment interest, punitive damages and the costs of this action and all other proper relief.

                Respectfully submitted,

                Keith L. Johnson #5010-84
                JOHNSON LAW OFFICE
                333 Walnut Street

**EXHIBIT**

"A"

Post Office Box 3453
Terre Haute, IN 47803
812-232-0909 Telephone
812-234-4945 Facsimile

## DEDICATED TRANSPORTATION AGREEMENT

THIS DEDICATED TRANSPORTATION AGREEMENT (the "Agreement") is made as of May 12, 2011 (the "Effective Date") between STAPLES, INC. ("Staples") and NFI INTERACTIVE LOGISTICS, LLC ("Carrier").

WHEREAS, Carrier is a motor Carrier registered with the U.S. Department of Transportation (the "DOT") and the Federal Motor Carrier Safety Administration (the "FMCSA"), as hereafter set forth, and desires to furnish transportation services to Staples for the transportation of general commodities, by motor vehicle, in interstate and intrastate commerce, and Staples desires to hire Carrier to perform such service as described herein, all in accordance with the provisions of the Title 49, United States Code, Section 14101(b);

WHEREAS, Staples desires to obtain such transportation and related services from Carrier on behalf of itself, its units, divisions, subsidiaries and affiliates;

NOW, THEREFORE, for good and valuable consideration which is acknowledged hereby and the Agreement's herein contained, the parties hereby agree as follows:

1.      TERM.  The term of this Agreement shall commence on the Effective Date and shall continue until the third (3rd) anniversary of the Effective Date (the "Term").  Thereafter, the Term shall automatically be extended on a month-to-month basis.

2.      TENDER; LOADING OR UNLOADING OF GOODS.  On and after the Effective Date, each and every shipment of Goods tendered or caused to be tendered to Carrier shall be deemed to be a tender to Carrier as a motor contract carrier and shall be governed and construed in accordance with the laws of the United States and the Commonwealth of Massachusetts, to the extent the latter are not inconsistent with applicable federal laws, rules or regulations or as otherwise modified herein. The Services provided herein are intended by the parties to be contract carriage as defined by said law.  The parties intend and agree that the contractual arrangement shall be continuous in nature until such time as this Agreement terminates or is effectively terminated by one or both of the parties. If Carrier inadvertently uses a bill of lading, the bill of lading shall constitute only the receipt contemplated herein.  To the extent permitted by law, the bill of lading shall have no contractual significance whatsoever other than with respect to the following information: name of consignor, name of consignee, date, description of commodities, weight or other description of shipment size, released value declaration (subject to the limitation contained in this Agreement), acknowledgment of receipt and acknowledgment of delivery.  No pre-printed term set out on such bill of lading shall govern the transportation to be performed under this Agreement.  Carrier shall assist Staples at retail stores in unloading each shipment tendered and transported under this Agreement at the charges contained in Schedule A attached hereto.  Carrier shall have no lien and/or security interest and hereby expressly waives its right to any lien and/or security interest in the Goods, Staples' Equipment or other property of Staples or cargo Staples may transport for others by operation of law, judgment or otherwise.

3.      SERVICE REQUIREMENTS.  The service and performance requirements to be performed under this Agreement are detailed in Exhibits 1 and 2 hereto.  Staples reserves the right to alter the Service Requirements (i.e., Network changes or return good process changes) based on changes in Staples' business.

4.      MANIFESTS, RECEIPTS AND BILLS OF LADING

1.


EXHIBIT
"B"

(a)     Each shipment shall be evidenced by a master manifest in the form specified by Staples, written or electronic, and shall be signed by Carrier or Carrier's agent or employee showing the kind and quantity of Goods received by Carrier at origin and intermediate points, if any. The absence or loss of any master manifest shall not relieve Carrier of its obligations and responsibilities with respect to any shipment Carrier shall indicate acceptance of each shipment and receipt of all seals tendered by Staples by legibly signing the original master manifest or a cargo receipt or bill of lading and indicating thereon the kind and quantity of Goods accepted by Carrier at the origin and all intermediate points, if any, designated by Staples. The signature of Carrier, its agents, employees or representatives, shall be evidence of and acknowledgment that the shipment is in the sole possession and responsibility of Carrier. Said signature shall also be evidence of and acknowledgment that the Goods are in good order and condition unless otherwise noted thereon, unless damage is not visible through ordinary visual inspection, or unless the shipment is accepted on the basis of Staples' load and count. The terms, conditions and provisions of any master manifest, receipt, bill of lading, or other form of shipping document shall be subject and subordinate to the terms and conditions in this Agreement and, in the event of a conflict, the terms, conditions and provisions of this Agreement shall govern.

(b)     Upon delivery of each shipment where a consignee representative is present, Carrier shall obtain a delivery receipt, in a form specified or approved by Staples, showing the kind, quantity and count of Goods delivered to the consignee of such shipment at the destination specified by Staples and the time of such delivery noting exceptions and/or damage to the Goods and Carrier shall cause such receipt to be signed by consignee or by such consignee's agent or employee at such destination. The consignee's signature on a delivery receipt shall be evidence and acknowledgment that the Goods are received in apparent good order and condition unless otherwise noted on the delivery receipt. Carrier agrees to retain all signed copies for two (2) years and shall make same available for Staples' inspection upon reasonable oral or written request.

(c)     When Carrier receives a loaded trailer from Staples based upon Staples' load and count as set forth herein, and when Carrier makes delivery of the Goods loaded upon such a trailer, and Carrier or consignee notes any discrepancies in quantity or quality of the Goods as shown on the master manifest, the parties shall presume that such discrepancy or damage did not arise while the Goods were in Carrier's possession. Carrier shall reasonably and in good faith, cooperate with Staples in the investigation of any such loss or damage and Carrier will promptly notify Staples if Carrier is, or becomes, aware of any fact, which would reasonably indicate that any loss or damage occurred while the Goods were in Carrier's possession. Should investigation by Staples and Carrier reveal Carrier negligent or otherwise at fault, Carrier will be responsible for the loss and/or damage to Goods.

5.     **CARRIER PERSONNEL**

(a)     Carrier shall, at no additional cost or expense to Staples, furnish all oil, tires and other parts, supplies, licensing and equipment necessary or required for the safe, efficient and lawful operation and maintenance of the tractors, trailers and other motor vehicles and related equipment furnished by Carrier, and identified in <u>Schedule A</u> attached hereto, for the performance of its obligations hereunder (collectively referred to as the "<u>Dedicated Fleet Equipment</u>"). Carrier shall pay all expenses of every nature, including the expense of road service, washing, repair and taxes in connection with the use and operation of the Dedicated Fleet Equipment. Carrier shall, at no additional cost or expense to Staples, and at all times during the term of this Agreement, maintain the Dedicated Fleet Equipment in good repair, mechanical condition and appearance in order to assure minimum service interruption due to mechanical failure. Such Dedicated Fleet Equipment may be required to display "Staples" name as agreed by both parties. Staples agrees to bear the cost of decals and their attendant installation and removal only.

(b)      In the event Carrier places or leaves its Dedicated Fleet Equipment, empty or loaded, attended or unattended, at or on Staples' facilities, Carrier does so at its own risk except as expressly provided in this Section. Staples assumes no liability whatsoever for the safety of Carrier's Dedicated Fleet Equipment and/or its contents. In the event that damage or destruction is caused to Carrier's Dedicated Fleet Equipment by Staples' negligent or intentionally wrongful acts or omissions, Staples shall be liable to Carrier only for the actual cost of repair of damage or actual replacement. Carrier shall give Staples prompt notice of any such loss or damage.

(c)      Carrier, at no additional cost or expense to Staples, shall employ only competent, able and legally licensed personnel in the operation of the Dedicated Fleet Equipment and shall provide said personnel with effective training and certification where appropriate under government regulations regarding the use and operation of all Dedicated Fleet Equipment, including, without limitation, Equipment used for loading and unloading, transportation and delivery.

(d)      Carrier shall take all reasonable action to prevent and enjoin all labor disputes, strikes and pickets arising out of Carrier's business or operations on or about or directed against the business, operations and/or premises of Staples and its customers.

(e)      If any Carrier personnel (including employees or permitted subcontractors) are on Staples' premises, Carrier shall cause such persons to comply with all of Staples' rules, regulations and policies regarding the workplace as well as applicable security procedures and fitness for duty requirements, including, without limitation, its policy on drugs and alcohol (collectively "Workplace Rules"). Staples may immediately remove any Carrier personnel from Staples' premises for security reasons or for noncompliance with Staples' Workplace Rules. Carrier agrees that any equipment or personal property brought onto Staples' premises during any such visit shall be at Carrier's risk and Staples shall not be responsible for any loss or damage resulting to such equipment or personal property, except to the extent any loss or damage is caused by Staples' negligence or intentional acts. Staples may request the replacement of any Carrier personnel that Staples reasonably determines is not satisfactorily performing the services (including, without limitation, for reasons of interpersonal skills) and Carrier shall use commercially reasonable efforts to comply with such request.

6.      **INDEPENDENT CONTRACTOR.** Each of the parties is an independent contractor and shall not be considered to be an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other. All personnel supplied or used by Carrier shall be deemed employees, agents or subcontractors of Carrier and shall not be considered employees, agents or subcontractors of Staples for any purpose whatsoever. Carrier shall assign only Carrier personnel or permitted subcontractors who are legally eligible to work in the location in which services are to be performed by those personnel or permitted subcontractors. Carrier assumes full responsibility for the actions of all such personnel and permitted subcontractors while performing services under this Agreement and for the payment of their compensation (including, if applicable, withholding of income taxes and the payment and withholding of social security and other applicable taxes), workers' compensation, disability benefits and the like to the extent applicable. Carrier shall defend, indemnify and hold harmless Staples and its directors, officers, employees, agents and Affiliates against: (i) all liability and loss in connection with, and shall assume full responsibility for, payment of all federal, state and local taxes or contributions imposed or required under unemployment insurance, social security and income tax laws and all other laws applicable to Carrier or its employees or permitted subcontractors engaged in performance of this Agreement; or (ii) any claim, demand, suit or action alleging that any employee, contractor or representative of Carrier is an employee of Staples. Such indemnity shall be governed by the terms of Section 15 below.

**7.     LOAD SECURITY.**  Carrier shall provide all necessary load securing devices including without limitation, track bars, pump bars load nets and load straps to secure Staples' shipments and will further re-secure all remaining product on multiple stop loads. Carrier will be responsible for replacement of any of these devices that are damaged, lost or stolen, except where Staples has caused or contributed to such damage, loss or theft. Load seals, if any, which Carrier is required to use under Staples' security policy after loading or unloading at intermediate stops, shall be seals provided by Staples, and shall be affixed and broken by Staples or Staples' agents or representatives, to all points of potential entry into Equipment or Staples' Equipment, as applicable, at all of Staples' facilities. Such seals shall not be disturbed, removed or replaced without the prior approval of Staples, except for government customs or law enforcement inspection and with appropriate re-sealing.

**8.     CARRIER'S REPRESENTATIONS.**

(a)     Carrier represents and warrants to Staples that:  (i) it has been issued appropriate authority (certificate or permit) by the DOT and the FMCSA (or by its predecessor, the former Interstate Commerce Commission) to lawfully transport, as a motor contract carrier, the goods, products and materials ("Goods") specified in Exhibit 1 attached hereto in intrastate, interstate and foreign commerce from, to or between all points and places in the United States and to lawfully provide to Staples all of the transportation and related services provided for in accordance with the terms, provisions and conditions of this Agreement (the "Services"), and that a true copy of such certificate or permit (the "Permit") is attached hereto; (ii) it is in full compliance with all rules and regulations of the DOT and the FMCSA governing interstate motor carriers, and (iii) it has full power to enter into this Agreement, to carry out its obligations under this Agreement and it has the requisite skill, experience and resources to perform the services and that the services shall be performed in a professional and workmanlike manner exercising due skill and care consistent with industry standards and with applicable law.

(b)     Carrier agrees that it shall: (i) notify Staples immediately in the event of any suspension, cancellation, termination, withdrawal, modification or transfer of its Permit, or any portion thereof, or any threatened or pending action with respect to the Permit; and (ii) submit to Staples copies of the financial reports filed with the Surface Transportation Board or any successor agency pursuant to its regulations. In the event Carrier is not subject to said regulations, Carrier agrees to submit to Staples other evidence of its financial condition acceptable to Staples on a quarterly basis or periodically based on mutual consent. Carrier, at no additional cost to Staples, shall procure and maintain all licenses and permits for its Dedicated Fleet Equipment required by local, state, federal or foreign authorities with respect to the Services and shall comply and cause its employees to comply with all applicable laws and regulations pertaining to the Services. Carrier shall insure that its drivers conduct any pre-trip inspections required by any applicable laws or regulations.

(c)     In the event that any shipment moves in intrastate commerce, Carrier shall comply with all applicable laws, rules and regulations governing such intrastate shipment, including, without limitation, laws respecting qualification and authority of Carrier to lawfully transport the Goods and to provide related Services. Upon request of Staples, Carrier shall furnish to Staples within five (5) days of such request, evidence of Carrier's legal authority to engage in such intrastate commerce. In the event a shipment moves in intrastate commerce, the terms, provisions and requirements of this Agreement shall control and shall be given equal effect and force as if such shipment moved in interstate commerce.

**9.     COMPENSATION.**

(a)     As compensation for the Services, Staples shall pay Carrier in accordance with the rates, charges, rules and regulations specified in Schedule A attached hereto and incorporated by reference herein. Such rates shall not change during the Term of the Agreement; provided that if the assumptions or operational requirements contained in Schedule A materially change during the Term, Carrier reserves

the right to adjust rates and shall provide Staples with at least 60 days written notice of such proposed rate adjustments (a "Rate Adjustment Notice"). Staples shall use commercially reasonable efforts notify Carrier in writing within 30 days of its receipt of a Rate Adjustment Notice whether it accepts or rejects such proposed rate adjustments. Carrier shall have the right to terminate this Agreement as provided in Section 20(d) below if Staples rejects Carrier's proposed rate adjustment.

(b) Third party revenue generating "back haul" shipments shall be encouraged and permitted provided such shipments comply with the terms and conditions of this Agreement. It is agreed that the parties shall share revenues from all back haul shipments as directed in Schedule A.

(c) The parties agree that notwithstanding the existence of a lower common carriage tariff rate, under no circumstances shall the shipment be deemed to have moved under the Carrier's common carrier authority, if any.

10.    INVOICES. Carrier shall issue and provide to Staples a weekly invoice in accordance with the rates established herein with all appropriate detailed backup by 5:00 P.M. EST on Wednesday for Services performed during the prior week, regardless of holidays. Carrier will maintain 98% accuracy in its billing process and will submit 98% of its bills on a timely basis as required herein. Staples reserves the right to initiate a "self-invoicing" process in the future. Any "self-invoicing" process must be approved in writing by Carrier. Such approval shall not be unreasonably withheld. Each of Carrier's invoices, if complete and correct, shall be paid not more than thirty (30) days from Staples' receipt of the invoice. Invoices shall include all Pro numbers and any other documentation required by Staples now or in the future. No additional charge, penalty or interest for late payment shall accrue. Adjustments for any invoice issues will be mutually agreed upon by both parties and rectified on the next scheduled invoice. Carrier and Staples will make every effort to resolve billing disputes within 30 days of the discovery of the dispute.

11.    SAFETY AND FINANCIAL CONDITIONS OF CARRIER. The parties recognize that safe, on time, dependable, damage-free and accident-free performance by Carrier is essential to Staples' business and operations. In the event Carrier receives an unsatisfactory safety rating from the DOT or the FMCSA, or in the event Carrier makes an assignment for the benefit of creditors, or file for protection under the bankruptcy laws, or if an involuntary petition in bankruptcy is filed against Carrier, Carrier shall immediately notify Staples in writing. During the Term, Carrier shall have and maintain a "Satisfactory" safety rating and shall notify Staples immediately upon receipt of any rating other than "Satisfactory".

12.    CARGO LIABILITY.

(a) Except as otherwise stated herein, Carrier shall be liable to Staples for the full amount of all loss, damage or injury occurring to or resulting from freight transported under this Agreement while in the possession or under the control of Carrier or its agents or employees as provided below.

(b) For shipments not moving under seal, Carrier will be fully liable for all carton counts (shortages) and cargo integrity.

(c) For shipments moving under seal, with the original bill of lading marked "Shipper Load and Count" ("SL&C") and with the seal number noted on the bill of lading, Carrier will be responsible for seal integrity only. The "SL&C" designation and seal number must appear on shipper's original bill of lading and Carrier's corresponding copy of the bill of lading.

(d) The measure of damages and Carrier's liability on shipments moving to Staples' Distribution Centers and Fulfillment Centers will be the invoice price of the goods paid by Staples, plus

inbound transportation costs, plus ten percent (10%). The ten percent (10%) damages will not apply, however, in the event of a total loss, where the restocking of goods at a Staples store or distribution center is not necessitated by the loss, in which case it will be five percent (5%).

(e)     The measure of damages and Carrier's liability on shipments moving from Staples' Fulfillment Centers to Staples' Delivery Operations and customers shall be the retail (selling) price to Staples' customers, plus inbound transportation costs, plus ten percent (10%). The ten percent (10%) damages will not apply, however, in the event of a total loss, where the restocking of goods at a Staples store or distribution center is not necessitated by the loss, in which case it will be five percent (5%).

(f)     The measure of damages and Carrier's liability on shipments lost or damaged while in transit from Staples' Distribution Centers to Staples' stores shall be the invoice price paid by Staples, plus inbound transportation costs, plus ten percent (10%). The ten percent (10%) damages will not apply, however, in the event of a total loss, where the restocking of goods at a Staples store or distribution center is not necessitated by the loss, in which case it will be five percent (5%).

(g)     Irrespective of any provisions in Carrier's tariff, bill of lading, rules, classification or other service publication, Carrier's liability for loss or damage shall be determined solely by the terms of this Agreement. Any attempts to limit Carrier's liability by tariff or other provisions incorporated by reference in a bill of lading or shipping document which conflict with the terms of this Agreement shall be deemed null and void.

(h)     Notwithstanding anything to the contrary, Carrier's liability for loss or damage to cargo shall not exceed $250,000 per occurrence.

(i)     Damaged cargo which is salvageable may only be resold, disposed of or used by Carrier with the prior written consent of Staples; provided that damaged Staples' own brand (such as Staples Brand or Quill Brand) cargo may only be used by Carrier and may not be resold under any circumstances. Damaged cargo which is not salvageable may not be resold and must be destroyed. The expense of destruction will be borne by each party to the extent that the loss was attributable to its acts or omissions (or the acts or omissions of any party for which it is responsible). Carrier shall fully and forever release and discharge Staples and its subsidiaries and Affiliates of and from any and all claims arising from or relating in any way to such damaged cargo.

13.     **CLAIMS.** Any claim made by Staples with respect to injury, loss or damage to the Goods must be made in writing within one hundred twenty (120) days after the date of shipment, setting out the details of the Goods in respect of which a claim is made including but not limited to a description of the nature of the Goods, their cost to Staples, their weight and any other information that Carrier may reasonably require. Carrier shall be entitled to request, and if so requested, Staples shall provide to Carrier proof of cost of the Goods involved in any claim. Carrier shall pay, decline or offer a firm compromise settlement with respect to each claim within ninety (90) days after receipt of the claim by Carrier; provided that the claim shall be presumed to be accurate in the event that Carrier fails to respond within this ninety (90) day period.

14.     **INSURANCE.** Prior to the start of any Services, Carrier shall at its own expense procure and maintain during the Term the minimum insurance set forth below covering Carrier (the "Required Insurance"). At the Effective Date, Carrier shall deliver to Staples certificates of insurance made out by the applicable insurer(s) or their authorized agents with respect to the Required Insurance and for any material policy amendments ("Insurance Certificates"). Carrier shall comply with all warranties, declarations and conditions contained in each policy. Each policy shall provide for 30 days prior written notice to be given by the insurer to Staples if there is any termination, non-renewal or cancellation, or any

reasonable action to prevent and enjoin, all labor disputes, strikes and pickets brought by employees or subcontractors of Carrier and arising out of Carrier's business or operations on or about or directed against the business, operations and/or premises of Staples.

(b)    Staples Indemnity.  Staples shall defend at its own expense Carrier and its directors, officers, employees, agents and Affiliates from and against any and all third party claims, demands, suits or actions resulting from, arising out of or relating to Staples' (including its employees and anyone acting on its behalf) alleged or actual: (i) breach of this Agreement; (ii) property damage, injury and/or death to persons caused by the hazardous or toxic nature of any Staples products transported by Carrier hereunder; (iii) failure to comply with or violation of any applicable laws, statutes, regulations, rules and ordinances; and (iv) injury and/or death to persons caused by defects or hazards on Staples' premises. (Any claim referenced in subsections (a) and (b) is referred to as an "Indemnifiable Claim").

(c)    Procedures.  The party being indemnified (the "Indemnified Party") agrees to give the indemnifying party (the "Indemnifying Party") prompt written notice of any Indemnifiable Claim.  Such notice shall not diminish the Indemnifying Party's indemnity obligations hereunder unless and only to the extent that the Indemnifying Party is materially and adversely affected by the Indemnified Party's failure or delay to give notice.  The Indemnifying Party shall control the defense or settlement of any Indemnifiable Claim.  The Indemnified Party shall reasonably cooperate (at the Indemnifying Party's expense) with the Indemnifying Party in the defense of such claim.  Any settlement by the Indemnifying Party must be approved by the Indemnified Party, with such approval not to be unreasonably withheld (except that any settlement requiring the Indemnified Party to make any admission of liability shall be subject to the Indemnified Party's approval in its sole discretion).  The Indemnified Party also has the right to retain its own counsel at its own expense in connection with such claim.  If the Indemnifying Party has been advised by the written opinion of counsel to either party that the use of the same counsel to represent both parties would present a conflict of interest, then the Indemnified Party may select its own counsel and all costs of the defense shall be borne by the Indemnifying Party.  With respect to each Indemnifiable Claim, the Indemnifying Party shall indemnify and hold harmless the Indemnified Party from and against any and all damages, judgments, awards, expenses, and costs that are awarded and payable to the third party by a court of competent jurisdiction or that are payable pursuant to a settlement made by the Indemnifying Party.

16.    LIMITATION OF LIABILITY.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, MULTIPLE, OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, EVEN IF ADVISED OF THE POSSIBILITY THEREOF.  THE FOREGOING LIMITATION OF LIABILITY SHALL NOT APPLY TO AMOUNTS PAYABLE BY A PARTY PURSUANT TO ITS INDEMNIFICATION OBLIGATIONS HEREUNDER, BUT SHALL APPLY IN ALL OTHER INSTANCES REGARDLESS OF THE CAUSE OF ACTION UNDER WHICH SUCH DAMAGES ARE SOUGHT.

17.    FORCE MAJEURE.  Neither party shall be liable for any delays or other non-performance resulting from circumstances or causes beyond its reasonable control that are not due to the negligence or misconduct of the party claiming relief under this Section, including, without limitation, fire or other casualty, act of God, war, terrorism, or other violence, any law, order or requirement of any governmental agency or authority or other causes beyond the reasonable control of such party (a "Force Majeure"), provided that such party has informed the other party of such Force Majeure promptly upon the occurrence thereof (including a reasonable estimate of the additional time required for performance to the extent determinable) and such party uses reasonable commercial efforts to effect the required performance as soon as reasonably practicable.  Any Force Majeure shall not excuse either party's

payment obligations hereunder (including without limitation, Carrier's obligations under Section 7 (Cargo Liability)), or affect Staples' rights under Section 12 (Insurance).

18.     **CONFIDENTIAL INFORMATION.**   In the course of their relationship, the parties may disclose to each other written or electronically communicated or stored information under this Agreement which they deem confidential, including, without limitation, pricing and sales information and customer names and the contents of this Agreement ("Confidential Information").   Accordingly, the parties hereby agree as follows: (A) each party shall not disclose Confidential Information to any other person, firm or corporation (including, without limitation, affiliated corporations and separate business units) except as provided herein, and shall use the same degree of care to avoid publication or dissemination of such Confidential Information as they employ with respect to their own information which they do not desire to have published or disseminated.   All Confidential Information shall be retained by each party in a secure place with access limited to only such of its employees or agents (including consultants, accountants and attorneys) who need to know such information for purposes of this Agreement and each of the foregoing persons shall be informed of the existence and terms of this Section and each party hereby acknowledges and agrees that it shall be liable to the other for any breach by its employees or agents; and (B) each party shall not use any Confidential Information in connection with its own marketing or product pricing or other internal purposes except to the extent necessary to fulfill its obligations under this Agreement; and (C) each party shall not solicit or market any product to any of the other party's customers based upon information provided to it by the other party (whether by customer list, customer registration or otherwise); and (D) at the conclusion of this relationship or upon demand by the other party, all Confidential Information, including marketing documents, other written notes, diagrams, memoranda, or notes taken by each party regarding Confidential Information, shall be at the request of the other party, destroyed.   However, each party shall be allowed to retain one copy of all information for historic reference and all terms of confidentiality shall continue to apply to said file.   The term "Confidential Information" shall not include, and each party shall have no obligation with respect to, any information which: (i) is already known to it; or (ii) is or becomes publicly known through no wrongful act of it; or (iii) is rightfully received from a third party without restriction and without breach of this Agreement; or (iv) is independently developed by it; or (v) is approved for release by written authorization of the other party.   The parties may disclose any Confidential Information received hereunder pursuant to any applicable law, regulation or court order, provided that such disclosure will be limited to the minimum acceptable level of disclosure and that the party required to disclose such information will immediately notify the other party of the imminent disclosure and reasonably cooperate to minimize or prevent such disclosure to the maximum extent allowed under applicable law, regulation or court order.   Each party acknowledges that disclosure or improper use of the Confidential Information would cause the other party immediate and irreparable harm.   Without limiting the following, each party agrees that the other party will be entitled to equitable relief in addition to any other remedies available to it.

19.     **NOTICES.**   Except as provided in the next paragraph, all notices or demands required or permitted pursuant to this Agreement shall be in writing, and shall be sent (a) by courier or in person with signed receipt, (b) by nationally recognized overnight delivery service, prepaid, with signature required or (c) by fax if promptly confirmed by copy sent pursuant to any of the foregoing methods, and in each case shall be sent to the other party at its address set forth on the signature page below, or to such other addresses as either party may designate from time to time by notice to the other party in accordance with this Section.   Notices shall be deemed received upon actual receipt or refusal of delivery.   In the event of accident, theft, delay, storage or other problems impairing the safe and prompt delivery of the freight, Carrier shall notify Staples.

20.     **TERMINATION.**

21. **GENERAL TERMS.**

(a) <u>Time of the Essence</u>. Time is of the essence with respect to any services to be performed hereunder.

(b) <u>Staples' Affiliates</u>. The rights granted to Staples hereunder shall extend to all Staples' Affiliates. The term "<u>Affiliate</u>" means any person or entity that now or hereafter directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, a party. The term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise, in each case as such terms are interpreted under Rule 12b-2 of the Securities Exchange Act of 1934, as amended.

(c) <u>Assignment</u>. This Agreement shall inure to the benefit of, and shall be binding upon, the parties and their respective heirs, permitted successors and permitted assigns. Neither party shall assign this Agreement or any rights hereunder or, except as expressly permitted in this Agreement, delegate any obligations hereunder to any third party without the other party's prior consent, which consent shall not be unreasonably withheld, delayed or conditioned; provided that Staples may assign this Agreement to any Affiliate. Any Change in Control of Carrier shall be deemed to be an assignment hereunder. "<u>Change in Control</u>" means: (i) any merger or consolidation of Carrier in which Carrier is not the continuing or surviving corporation or pursuant to which its shares would be converted into cash, securities or other property; (ii) any sale, lease, exchange or other transfer (in one transaction or a series of related transactions) of all, or substantially all, Carrier's assets or more than 50% of its shares; (iii) the liquidation or dissolution of Carrier; and/or (iv) a change in a majority of the members of Carrier's board of directors. Either party shall have the right in its discretion to terminate this Agreement immediately in addition to all other available remedies if there is any assignment or delegation in violation of the foregoing.

(d) <u>Publicity</u>. Carrier shall not advertise, market, disclose or otherwise make known to others any information relating to any terms of this Agreement, the existence of this Agreement, or the existence of a relationship with Staples, including mentioning or implying the name of Staples, or any of its Affiliates or personnel, without the prior written consent of Staples, which may be withheld in Staples' sole discretion. However, Carrier may disclose such information as may be expressly required under applicable law without such consent from Staples; provided that Carrier promptly (prior to such disclosure to the extent possible) notifies Staples in writing of any such disclosure required by law, including any notices received by Carrier requiring such disclosure.

(e) <u>Governing Law</u>. This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts excluding its conflict of law provisions. The parties agree to sole venue in the state or federal courts located in the Commonwealth of Massachusetts, and each party hereby consents to the jurisdiction of such courts over itself in any action relating to this Agreement.

(f) <u>Severability</u>. If any provision of this Agreement is found to be invalid or unenforceable to any extent, then the invalid portion shall be deemed conformed to the minimum requirements of law to the extent possible. In addition, all other provisions of this Agreement shall not be affected and shall continue to be valid and enforceable to the fullest extent permitted by law.

(g) <u>Waiver</u>. No waiver of any provision of this Agreement shall be valid unless in writing signed by the party to be charged. No waiver with respect to any provision on one occasion shall be deemed a waiver of such provision on any other occasion.

(h)     Amendment.  Any modification or amendment of this Agreement must be in writing and bear the signature of the duly authorized representatives of both parties (faxed signatures are sufficient for purposes of this section, but electronic or digital signatures are not sufficient).

(i)     Entire Agreement; Interpretation.  This Agreement, together with any document that the Agreement references as being attached hereto or incorporated herein by reference, sets forth the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes any other agreements, discussions, proposals, representations or warranties, whether written or oral between the parties with respect to the subject matter hereof.  Each party acknowledges that this Agreement has been the subject of active and complete negotiations, and that this Agreement should not be construed in favor of or against any party based on such party's or its advisors' participation in the preparation of this Agreement.

(j)     Remedies.  Except as expressly provided in this Agreement, a party's exercise of any right or remedy under this Agreement or under applicable law is not exclusive and shall not preclude such party from exercising any other right or remedy that may be available to it.  If either party seeks monetary damages from the other party, and a final judgment is entered entirely in favor of the party defending the monetary damages claim, then the party who brought such monetary claim shall reimburse the defending party for its reasonable attorney's fees and costs paid defending that claim.  Otherwise, each party shall bear its own fees and expenses unless otherwise provided by statute.

(k)     Third Party Beneficiaries.  This Agreement is for the sole benefit of the parties and is not intended to, and shall not be construed to, create any right or confer any benefit on or against any third party, except as expressly provided in this Agreement.  Notwithstanding the foregoing, Staples' Affiliates are third party beneficiaries of this Agreement.

(l)     Effectiveness of Agreement.  The preparation, revision or delivery of this document for examination and discussion is not an offer to enter into any agreement and is merely a part of the negotiations between the parties.  Neither party shall have any obligation or liability to the other whatsoever at law or in equity (including, without limitation, any claims for detrimental reliance or promissory estoppel) relating to the subject matter hereof unless and until such time as both parties shall have executed and delivered this Agreement.

(m)     Counterparts; Signatures.  This Agreement may be executed in separate counterparts, each of which shall be deemed an original, and all of which shall be deemed one and the same instrument.  The parties' faxed signatures shall be effective to bind them to this Agreement.

(n)     Audit.  Carrier shall maintain at no additional cost to Staples, in a reasonably accessible location, all documentation for the services provided hereunder for seven (7) years or as required by law, if longer, which records may be inspected, audited and copied by Staples or its authorized representatives quarterly.

(o)     Ratification.  Carrier and Staples are parties to that Staples Outbound Transportation Agreement effective as of March 1, 2000, as amended by Amendments dated as of October 6, 2006 and October 1, 2007 (as amended, the "Original Agreement").  The parties agree and acknowledge that:  (a) according to the terms and conditions of the Original Agreement, the term of the Original Agreement may have expired with respect to certain Staples locations on or after January 31, 2010, and that after such date the parties continued to do business according to the terms and conditions in the Original Agreement, and by their course of conduct effectively agreed to extend the term of the Original Agreement from such date until the Effective Date (such period is referred to as the "Extended Term"); (b) the Original Agreement continued in full force and effect during the Extended Term; and (c) any and all actions or omissions of

12

(a)     Termination for Breach.  If either party fails to comply in any material respect with any covenant, agreement or condition herein, or repeatedly fails to comply in any nonmaterial respect with any covenants, agreements or conditions herein such that the cumulative effect of such noncompliance may be reasonably considered by the non-breaching party to be material, and such failure continues for thirty (30) days after written notification from the non-breaching party, the non-breaching party may, at its sole discretion and in addition to any other right or remedy available under applicable law or in equity, terminate this Agreement upon an additional ten (10) days notice to the breaching party.

(b)     Termination for Insolvency.  If either party becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of a receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or insolvency law, whether domestic or foreign, or is wound up or liquidated, voluntarily or otherwise then the other party may terminate this Agreement immediately.

(c)     Termination for Safety Issues or Authority Issues.  Staples may immediately terminate this Agreement by written notice to Carrier if: (i) Carrier receives an unsatisfactory safety rating from the DOT or the FMCSA; or (ii) Carrier's Permit is suspended, cancelled, terminated, revoked or withdrawn.

(d)     Termination for Convenience.  Staples may terminate this Agreement (or any Appendix D), for any reason or for no reason, upon 90 days prior written notice to Carrier, in which case Staples shall remit all fees and payments applicable to services performed prior to the date of termination.  Carrier may terminate this Agreement for any reason or for no reason, upon 120 days prior written notice to Staples; provided that if Carrier terminates this Agreement because of Staples' rejection of Carrier's proposed rate adjustment by giving notice of such termination within 30 days following Staples' rejection of Carrier's proposed rate adjustment, Staples shall pay Carrier at the increased rates, which increase shall not exceed four percent (4%) of the existing rates, during the 120 day notice period required for such termination.  In the event Staples declines to consent to any assignment of this Agreement by Carrier pursuant to Section 20(c) below, Staples may immediately terminate this Agreement.  In addition, in the event that Staples closes a distribution or fulfillment center, Staples shall provide Carrier with as much notice as reasonably possible and may immediately terminate the Services provided by Carrier at that location.

(e)     Return of Materials.  Upon termination or expiration of this Agreement, Carrier and Staples shall forthwith return to the other party all papers, materials, and other properties of such other party held by each for purposes of performance of this Agreement. In addition, each party will assist the other party in orderly termination of this Agreement as may be necessary for the orderly, non-disrupted business continuation of each party.

(f)     Responsibility for Cover Services.  Upon any termination of this Agreement by Staples pursuant to subsections 18(a) and (b), Staples shall have the option of seeking replacement Services from an alternate carrier ("Cover Services"), and Carrier shall promptly reimburse Staples for any additional costs incurred as a result of Staples' purchase of Cover Services, provided that Staples uses commercially reasonable efforts to mitigate such costs.

(g)     Survival.  The following Sections shall survive any expiration or termination of this Agreement:  Section 4 (Manifests, Receipts and Bills of Lading); Section 8 (Carrier's Representations); Section 5 (Carrier Personnel); Section 6 (Independent Contractor); Section 12 (Cargo Liability); Section 13 (Claims); Section 14 (Insurance); Section 15 (Indemnification); Section 16 (Limitation of Liability); Section 17 (Force Majeure); Section 18 (Confidential Information); Section 19 (Notices); Section 20 (Termination); and Section 21 (General Terms).

either party taken during the Extended Term were governed by the terms and conditions in the Original Agreement. This Agreement replaces the Original Agreement in its entirety and upon the complete execution of this Agreement, the Original Agreement is terminated.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in their respective names by their duly authorized representatives as of the Effective Date.

NFI INTERACTIVE LOGISTICS, LLC                          STAPLES, INC.


By: _____                          By: _____  6/7/11
Name: Joseph Roeder                                     Name: Joseph Doody
Title: President                                        Title: President NAD

Notice address:                                         Notice address:

    1515 Burnt Mill Rd                                  Staples, Inc.
    Cherry Hill, NJ 08003                               500 Staples Drive
                                                        Framingham, MA 01702
                                                        Attn: VP Inbound Logistics
                                                        Fax: 508-253-8662
                                                        with a copy to: General Counsel
                                                        (ref: NFI Interactive Logistics, LLC)


Exhibits and Schedules:

Exhibit 1            Services
Exhibit 2            Performance Standards
Schedule A           Rates and Operating Parameters

Client#: 360845
NFIINDUS

# ACORD™  CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
6/25/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Brendan Buchness | |
|---|---|---|
| Conner Strong & Buckelew | PHONE (A/C, No, Ext): 877 861-3220 | FAX (A/C, No): |
| Two Liberty Place | E-MAIL ADDRESS: bbuchness@connerstrong.com | |
| 50 S. 16th Street, Suite 3600 | | |
| Philadelphia, PA 19102 | INSURER(S) AFFORDING COVERAGE | NAIC # |

| INSURED | INSURER A: Zurich American Insurance Compa | 16535 |
|---|---|---|
| NFI Interactive Logistics LLC | INSURER B: AGCS Marine Insurance Company | 22837 |
| 1515 Burnt Mill Road | INSURER C: American Zurich Ins. Co. | 40142 |
| Cherry Hill, NJ 08003 | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | GLO913955607 | 10/01/2013 | 10/01/2014 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | | |
| A | AUTOMOBILE LIABILITY | | | CAO647684400 | 10/01/2013 | 10/01/2014 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N | | | WC591623908 | 10/01/2013 | 10/01/2014 | X WC STATU-TORY LIMITS  OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| B | Cargo | | | MXI93055844 | 02/01/2014 | 02/01/2015 | Per Trailer: $100,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
STAPLES, Inc., and its subsidiaries and affiliates are included as an Additional Insured on the Automobile and General Liability policies, where required by written contract or agreement.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| STAPLES, INC., and its subsidiaries and affiliates  Attn: Roger Will, VP Transp.  500 Staples Drive  Framingham, MA 01702 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  W. Melvel Tapwal |

© 1988-2010 ACORD CORPORATION. All rights reserved.
ACORD 25 (2010/05)   1 of 1   The ACORD name and logo are registered marks of ACORD
#S1112683/M1088959

JPJ

**EXHIBIT**
"C"

AMENDMENT
TO
MOTOR CARRIER AGREEMENT

THIS AMENDMENT TO MOTOR CARRIER AGREEMENT (the "Amendment") is made as of June 18, 2014 (the "Effective Date") between NFI INTERACTIVE LOGISTICS, LLC ("Carrier") and STAPLES, INC. ("Staples"):

WHEREAS, Carrier and Staples are parties to that Motor Carrier Agreement effective as of May 12, 2011 (the "Agreement"), and wish to amend the Agreement as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **Term.** Section 1 of the Agreement is hereby amended to extend the Term of the Agreement through June 18, 2018.

Unless otherwise modified by this Amendment, all terms and conditions contained in the Agreement shall continue in full force and effect. All capitalized terms used herein shall have the meanings assigned to them in the Agreement, unless otherwise defined herein.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the Effective Date.

NFI INTERACTIVE LOGISTICS, LLC

By: _____

Name: Joe Konder

Title: President   7-22-14

STAPLES, INC.

By: _____

Name: Susan Pellechio

Title: VP, Transportation

Thank you.

Randall W. Graff
Shareholder/Partner



KOPKA PINKUS DOLIN PC
550 Congressional Blvd., Ste. 310 Carmel, IN 46032
T: 317.818.1360 | F: 317.818.1390
Direct: 317.814.4044
Offices in Illinois, Indiana and Michigan

website | vCard | map | email

*Re: Bogard*
*Client #: 250545*

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 6/25/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Brendan Buchness |
|---|---|
| Conner Strong & Buckelew<br>Two Liberty Place<br>50 S. 16th Street, Suite 3600<br>Philadelphia, PA 19102 | PHONE (A/C, No, Ext): 877 861-3220    FAX (A/C, No): |
| | E-MAIL ADDRESS: bbuchness@connerstrong.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: Zurich American Insurance Compa | 16535 |
| NFI Interactive Logistics LLC | INSURER B: AGCS Marine Insurance Company | 22837 |
| 1515 Burnt Mill Road | INSURER C: American Zurich Ins. Co. | 40142 |
| Cherry Hill, NJ 08003 | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS-MADE [X] OCCUR | | | GLO913955607 | 10/01/2013 | 10/01/2014 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | GENERAL AGGREGATE | $1,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY<br>[X] ANY AUTO<br>[ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | CAO647684400 | 10/01/2013 | 10/01/2014 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | [ ] UMBRELLA LIAB [ ] OCCUR<br>[ ] EXCESS LIAB [ ] CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | [ ] DED [ ] RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC591623908 | 10/01/2013 | 10/01/2014 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| B | Cargo | | | MXI93055844 | 02/01/2014 | 02/01/2015 | Per Trailer: $100,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
STAPLES, Inc., and its subsidiaries and affiliates are included as an Additional Insured on the Automobile and General Liability policies, where required by written contract or agreement.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| STAPLES, INC., and its<br>subsidiaries and affiliates<br>Attn: Roger Will, VP Transp.<br>500 Staples Drive<br>Framingham, MA  01702 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*W. Michael Kapraud* |

ACORD 25 (2010/05)    1 of 1
#S1112683/M1088959

The ACORD name and logo are registered marks of ACORD

© 1988-2010 ACORD CORPORATION. All rights reserved.

JPJ

material change in coverage or deductible amounts. All Required Insurance shall (i) provide primary coverage for liability assumed by Carrier under this Agreement and not call upon any other insurance procured by other parties for defense, payment or contribution, and (ii) be provided on an occurrence rather than a claims made basis. If any Required Insurance is available only on a claims-made basis, then the dates of coverage (including the retroactive date) and the time period within which any claim can be filed shall continue during the Term and for a period of 3 years thereafter and shall be stated on the Insurance Certificate, and Carrier shall not permit any gaps in coverage to occur. All Required Insurance shall be carried with responsible insurance companies of recognized standing which are authorized to do business in the state in which the services are rendered and are rated A VIII or better by A.M. Best. If Carrier fails to procure or maintain the Required Insurance, Staples shall have the right, but not the obligation, to effect such insurance at Carrier's reasonable expense with notice to Carrier. Without limiting the foregoing, Carrier shall indemnify and hold harmless Staples against all liability and loss in connection with Carrier's failure to comply with the provisions of this Section. The Required Insurance, however, in no manner relieves or releases Carrier, its agents, subcontractors, and invitees from, or limits their liability as to, any and all obligations assumed or risks indemnified against in this Agreement. Any Insurance Certificate shall state that Staples, Inc. and Its Affiliates are included as additional insureds ATIMA (As Their Interests May Appear).

A. *General Liability*
$2,000,000 Bodily Injury and Property Damage per Occurrence

B. *Workers' Compensation*
Workers' Compensation – Statutory
Employer's Liability - $2,000,000

C. *Automobile Liability*
$1,000,000 Combined Single Limit Each Occurrence (including coverage for environmental restoration of at least $500,000)

D. *Umbrella/Excess*
$4,000,000 each occurrence excess of underlying
$4,000,000 Products/Completed Operations Aggregate Excess of Underlying

E. *Motor Truck Cargo*
$250,000 per shipment

15. INDEMNITY.

(a)    Carrier Indemnity. Carrier shall defend at its own expense Staples and its directors, officers, employees, agents and Affiliates from and against any and all third party claims, demands, suits or actions resulting from, arising out of or relating to (i) Carrier's (including its employees and anyone acting on its behalf) alleged or actual: (A) negligent acts or omissions, willful misconduct or fraud in connection with this Agreement; (B) injury and/or death to persons, including without limitation, Carrier's employees or agents; (C) damage to or destruction of tangible property or any loss of use resulting therefrom; (D) breach of this Agreement; (E) failure to comply with or violation of any applicable laws, statutes, regulations, rules and ordinances; and (F) liability, costs and expenses in connection with or arising out of Carrier's disposal of equipment parts, liquids and solids, hazardous or otherwise, and alleged violation by Carrier of the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State, foreign or local law, regulation or order regarding the environment or contamination thereof now in effect or hereinafter enacted; or (ii) any fines, levies or other charges imposed by any government authority or agency resulting from Carrier's acts or omissions hereunder. Carrier shall also defend, indemnify and hold Staples harmless with respect to, and take all

7

78909/10

| STATE OF INDIANA | ) | VIGO COUNTY SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF VIGO | ) | CAUSE NO: 84D06-1408-CT-6424 |

JAMES B. BOGARD,                    )

      Plaintiff,                    )

v.                    )

STAPLES THE OFFICE SUPERSTORE    )
EAST, INC.                    )

      Defendant.                    )

**FILED**
VIGO COUNTY SUPERIOR COURT

SEP 1 6 2014

David R. Crockett
CLERK

## DEFENDANT STAPLES THE OFFICE SUPERSTORE EAST, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW the Defendant, Staples the Office Superstore East, Inc. ("Staples"), by

counsel, James H. Milstone and Kopka Pinkus Dolin, PC, and for its Answer to Plaintiff's

Complaint for Damages states as follows:

    1.    On May 8, 2014, Plaintiff was employed as an over the road commercial truck

driver and had received a truck load of goods from Defendant Staples Distribution Center in

Terre Haute, Vigo County, Indiana.

**ANSWER: The Defendant lacks information and knowledge sufficient to either admit or**

**deny the allegations in this paragraph, and so denies same.**

    2.    On May 8, 2014, agents, servants or employees of Defendant negligently and

carelessly loaded an individual carton and tote on top of a properly packaged and secured pallet

of Staples goods.

**ANSWER: The Defendant denies the allegations in this paragraph.**

    3.    On May 8, 2014, the negligently loaded carton and tote fell from atop the pallet

striking Plaintiff on the head and shoulders causing Plaintiff to be hurt, injured and impaired all

to his detriment and damage.

7.   The sole and proximate cause of the Plaintiff's alleged injuries were the acts and omissions of persons or entities other than the Defendant over whom the Defendant had no control and for whom they bear no responsibility.

8.   That the Plaintiff's claim and injuries were caused by an open and obvious danger. This Defendant had no duty toward the Plaintiff, including any duty to warn with respect to such an obvious danger.

9.   The Plaintiff may have received or may in the future receive compensation, payments, and/or other types of contribution for his alleged injuries and damages. Any award of damages assessed against the Defendant should be diminished or reduced by the amount of compensation received or to be received by the Plaintiff from other sources.

10.  The Defendant reserves the right to add additional Affirmative Defenses as these become known through the process of discovery.


WHEREFORE the Defendant respectfully prays that the Plaintiff take nothing by way of the Complaint for Damages, for appropriate relief pursuant to the Indiana Comparative Fault Act, and for all other just and appropriate relief in the premises including costs in this action.


## REQUEST FOR JURY TRIAL

COMES NOW the Defendant, by counsel, and pursuant to Trial Rule 38 requests that this cause be tried by jury.

3

ANSWER: The Defendant denies the allegations in this paragraph.

4.      That Defendant loaded said carton and tote with callous and utter indifference to Plaintiff's health and well being knowing or having reason to know that by doing so someone would likely be injured.

ANSWER: The Defendant denies the allegations in this paragraph.

**Defendant denies all other allegations contained in Plaintiff's Complaint not hereinabove answered more specifically. As to any rhetorical paragraphs not heretofore specifically admitted, denied or otherwise controverted, the same are hereby denied at this time.**

## AFFIRMATIVE DEFENSES

Subject to further discovery, Defendant asserts the following affirmative defenses:

1.      The Complaint fails to state a claim upon which relief can be based.

2.      The Plaintiff's claimed injuries may have resulted from Plaintiff's own fault. The Defendant asserts its rights to seek judgment in its favor, or a proportional reduction of the judgment under the Indiana Comparative Fault Act.

3.      The Plaintiff may have failed to exercise due care for his own safety.

4.      The Plaintiff may have failed to mitigate damages.

5.      The Plaintiff knowingly and voluntarily assumed and/or incurred the risk of injury to himself.

6.      The Plaintiff's injuries and damages, if any, were proximately caused, in full or in part, by the employer of the Plaintiff, NFI, whom Plaintiff specifically names as a responsible non-party. The Defendant requests that the trier of fact consider the fault of such non-party in rendering a verdict.

| From: | Randall Graff |
|---|---|
| Sent: | Tuesday, May 17, 2016 5:16 PM |
| To: | 'mike.bianchi@zurichna.com' |
| Cc: | 'Daniel.Deitch@NFIIndustries.com' |
| Subject: | File: 78909  Tender of Defense - Zurich Claim no. 4720106649   Your insured: NFI Industries, Inc.  -  Claimant: James B. Bogard |
| Attachments: | Staples - Cert of Ins - NFI Industries.pdf; Staples Answer to Pltf's Complaint.pdf; Staples Answer to Pltf's Complaint.pdf |
| Importance: | High |

This will confirm our telephone conversation today concerning the tender of defense by Staples, Inc. to NFI Industries, Inc. for the May 8, 2014 occurrence involving the claimant, James B. Bogard.  I am a coverage attorney assisting attorney April Jay in this matter.  Our firm represents "Staples the Office Superstore East, Inc."  which is an affiliate of Staples, Inc.

In regard to your May 5, 2016 correspondence to Ms. Jay, please note that regardless of whether you think NFI has a contractual obligation to defend and indemnify Staples, <u>Zurich has an obligation to defend and indemnify its insureds.</u>

Attached is a Certificate of Liability Insurance showing that Staples, Inc. is an Additional Insured under the Zurich General Liability policy, policy no. GLO913955607, and under the Zurich Automobile policy, policy no. CAO647684400.

<u>Since Staples is an Additional Insured, please send us certified copies of both policies</u> (so that we will not need to contact the Indiana Department of Insurance).  As you may know, issues of loading and unloading are often covered under the auto policy rather than under the GL policy, but we request certified copies of both policies.

And Staples hereby reiterates its tender of defense to Zurich concerning the above-referenced suit.

———————

Also, the Indemnity provision in Section 15 of the Dedicated Transportation Agreement states:

"Carrier [NFI] <u>shall defend at its own expense Staples</u> . . .  and its . . . Affiliates from and against any and all third party claims, demands, suits or actions resulting from arising out of or relating to
(i) Carrier's (<u>including its employees</u> . . .) <u>alleged or actual:</u>
(A) <u>negligent acts or omissions</u> . . . in connection with this Agreement;
(B) <u>injury</u> and or death to persons including without limitation, <u>Carrier's employees</u> or agents . . . ."  [Emphasis added.]

The Affirmative Defenses in the attached Answer allege comparative negligence by the NFI employee and claimant, James Bogard.  The Indemnity provision in Section 15 requires NFI to defend Staples at NFI's expense when there are alleged negligent acts and when there is an injury to an NFI employee that arises out of the work that is the subject of the Dedicated Transportation Agreement.

Staples hereby also reiterates its tender of defense to NFI concerning the above-referenced suit.

Please confirm receipt of this correspondence by reply email.


EXHIBIT
"D"

Respectfully Submitted,

James H. Milstone (#10460-02)
Attorney for Defendant Staples the Office
Superstore East, Inc.

KOPKA PINKUS DOLIN, PC
P. O. Box 40389
Indianapolis, IN 46240
Ph:    317-818-1360
Fx:    317-818-1390
Email: JHMilstone@kopkalaw.com

### Certificate of Service

I certify that on _September 16_, 2014, service of a true and complete copy of this
document was made upon the following attorney of record by depositing same in the U.S. Mail
with sufficient first-class postage affixed:

Keith L. Johnson
Johnson Law Office
333 Walnut Street
P.O. Box 3453
Terre Haute, IN 47803

4

Broadspire®
A CRAWFORD COMPANY
*PO Box 14343*
*Lexington, KY 40512-4343*

*Phone: (631) 232-8245*
*Fax: (770) 777-6404*

*Via email Daniel.Deitch@NFIindustries.com*
January 25, 2017

NFI Industries
Daniel Deitch
1515 Burnt Mill Road
Cherry Hill N.J. 08003

| |
|---|
| Claim #: 187593911-001 |
| Date of Loss: 5/8/2014 |
| Insured: Staples, Inc. |

RE: Claimant: James Bogard
Our Client: Staples, Inc. - Takeover (In-Ace)
Policy No.: ISAH08818897

Dear Mr. Deitch:

Our office represents ACE AMERICAN INSURANCE COMPANY, which insures STAPLES, INC. under a policy of insurance coverage applicable to the captioned date of loss.

I am following up on your letter of October 15,2015 to Staples defense attorney April Jay.

I am renewing Staples request to have NFI take over the defense and indemnification of Staples as per the section 15 a of the contract between Staples and NFI

The indemnification clause in the agreement provides that the carrier, or NFI:

> (a) Carrier Indemnity. Carrier shall defend at its own expense Staples and its directors, officers, employees, agents and Affiliates from and against any and all third party claims, demands, suits or actions resulting from, arising out of or relating to (i) Carrier's (including its employees and anyone acting on its behalf) alleged or actual: (A) negligent acts or omissions, willful misconduct or fraud in connection with this Agreement; (B) injury and/or death to persons, including without limitation, Carrier's employees or agents; (C) damage to or destruction of tangible property or any loss of use resulting therefrom; (D) breach of this Agreement; (E) failure to comply with or violation of any applicable laws, statues, regulations, rules and ordinances; and (F) liability, costs and expenses in connection with or arising out of Carrier's disposal of equipment parts, liquids and solids, hazardous or otherwise, and alleged violation by Carrier of the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State, foreign or local law, regulation or order regarding the environment or contamination thereof now in effect or hereinafter enacted; or (ii) any fines, levies or other charges imposed by any government authority or agency resulting from Carrier's acts or omissions hereunder. Carrier shall also defend, indemnify and hold Staples harmless with respect to, and take all reasonable action to prevent and enjoin, all labor disputes, strikes and pickets brought about by employees or subcontractors of Carrier and arising out of Carrier's business or operations on or about or directed against the business, operations and/or premises of Staples.

EXHIBIT
tabbies
E

that NFI is required under the contract to defend Staples in this lawsuit as one of its employees brought suit against Staples alleging injury per (a)(i)(A) [negligent acts of Plaintiff] and (D) [breach of this Agreement] of the Agreement by virtue of its breach of §7 of the Agreement [load security].

The agreement also requires NFI to name Staples as an additional insured. *See* §14 of the Agreement. We will reach out to NFI and inquire whether it named Staples as an additional insured.

I attach a copy of the contract and Certificate of Insurance naming Staples as an additional insured under the NFI policy.

It is our contention that the injuries to James Bogard were the result of his driving the involved vehicle in route from the distribution center to its destination and his actions caused the load to shift.

Sincerely,
Broadspire Services, Inc. on behalf of:
Ace American Insurance Company

*Robert E Nowlin*
Senior Claim Examiner
(631) 232-8245

Cc Michael Bianchi
   Dallas Transportation Team
   Zurich North America Claims
   Liability Claims-South Central Region
   P.O. Box 968072
   Schaumburg, IL 60196-8072
   Phone (214) 866-1564
   Fax (866) 689-8972
 mike.bianchi@zurichna.com

Cc: Kopka Pinkus Dolin
   James Milstone
   550 Congressional Blvd.
   Carmel In. 456032
   jhmilstone@kopkalaw.com

STATE OF INDIANA    )
    ) SS:
COUNTY OF VIGO    )

VIGO CIRCUIT/SUPERIOR COURT

CAUSE NO: 8 4 D 0 3 - 1 7 0 3 - PL  2 4 7 8

STAPLES THE OFFICE SUPERSTORE )
EAST, INC., )
  )
    Plaintiff, )
vs. )
  )
ZURICH AMERICAN INSURANCE )
COMPANY and JAMES B. BOGARD )
  )
    Defendants. )

**FILED**
VIGO COUNTY SUPERIOR COURT

MAR 3 1 2017

CLERK

## SUMMONS

TO DEFENDANT:    Zurich American Insurance Company
1299 Zurich Way
Schaumburg, IL 60173-5870

You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.
The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____, 2017

(Seal)
Clerk, Vigo County

**(The following manner of service of summons is hereby designated.)**

**XX**    Registered or certified mail.

**xx**    Service at place of employment, to wit: Zurich American Insurance Co., Schaumburg, IL

    Service on individual (Personal) at above address.

    Service on agent. (Service on Registered agent)

    Other Service. (Specify)

Vigo Superior Court Division 3
3rd Floor 812-462-3241
33 South Third Street
Terre Haute, Indiana 47807

**Randall W. Graff**
**Attorney for Plaintiff**
KOPKA PINKUS DOLIN PC
550 Congressional Blvd., Ste. 310
Carmel, IN 46032
Tel: 317-818-1360
Fax: 317-818-1390

**Courtroom Address:**
Vigo County Circuit/Superior Court
33 South Third Street
Courthouse, 1st Floor
Terre Haute, IN 47807
Telephone:  (812) 232-3375 (Clerk's Office)

## *CLERK'S CERTIFICATE OF MAILING*

I hereby certify that on the _____ day of April, 2017, I mailed a copy of this Summons and a copy of the complaint to the defendant **Zurich American Insurance Company,** by **certified mail**, requesting a return receipt, at the address furnished by the plaintiff.

_____
Clerk, Vigo County

Dated:_____, 2017            By:_____
                                                    Deputy

## *RETURN ON SERVICE OF SUMMONS BY MAIL*

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant, _____was accepted by the defendant on the _____ day of _____, 2017.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint were returned not accepted on the _____ day of _____, 2017.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____ was accepted by _____on behalf of said defendant on the _____ day of _____, 2017.

_____

Clerk, Vigo County

By:

_____

Deputy

**FILED**

IN THE VIGO COUNTY SUPERIOR COURT 3 VIGO COUNTY SUPERIOR COURT

STATE OF INDIANA                          APR **2 0** 2017

*Bradly M /feuua*
**CLERK**

| | |
|---|---|
| STAPLES THE OFFICE SUPERSTORE EAST, INC., | ) ) ) |
| Plaintiff, | ) ) CAUSE NO.:  84D03-1703-PL-002478 |
| v. | ) ) |
| ZURICH AMERICAN INSURANCE COMPANY  and  JAMES B. BOGARD, | ) ) ) |
| Defendants. | ) ) |

## APPEARANCE BY ATTORNEY IN CIVIL CASE

**Party Classification:** Initiating ___ Responding __√__ Intervening ___

1.     The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member(s):

Zurich American Insurance Company

2.     Applicable attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

John C. Trimble                          Attorney No. #1791-49
Meghan R. Ruesch                     Attorney No. #32473-49
LEWIS WAGNER, LLP               Phone: (317) 237-0500
501 Indiana Avenue, Suite 200     FAX:   (317) 630-2790
Indianapolis, IN  46202

3.     There are other party members: Yes __√__ No ___ *(If yes, list on continuation page.)*

4.     *If first initiating party filing this case,* the Clerk is requested to assign the case the following Case Type under Administrative Rule 8(b)(3):

5.     I will accept service by fax at the above noted number: Yes __√__ No ___

This attorney would represent to the court that he feels fax service is unnecessary and burdensome under normal circumstances. However, fax service is acceptable in emergency situations.

{0008700/0594/01081744 v1}

**APPEARANCE FORMAT -- CONTINUATION PAGE**
**(Civil Case for Use by Attorney)**

6.    This case involves support issues. Yes ___ No __√__ *(If yes, supply social security numbers for all family members on continuation page.)*

7.    There are related cases: Yes ___ No __√__ *(If yes, list on continuation page.)*

8.    This form has been served on all other parties.  Certificate of Service is attached.  Yes __√__ No

9.    Additional information required by local rule: _

Case Number: ___ 84D03-1703-PL-002378Z

First Listed Party Member:  Zurich American Insurance Company

Continuation of Item 3 (Other party members not represented by this attorney):

James B. Bogard

LEWIS WAGNER, LLP

By: _____

JOHN C. TRIMBLE, #1791-49
MEGHAN E. RUESCH, #32473-49
*Counsel for Defendant Zurich American
Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing upon all counsel of record, as follows, by first class U.S. mail, postage prepaid, on this 18th day of April, 2017:

Randall W. Graff
KOPKA PINKUS DOLIN PC
550 Congressional Blvd.
Suite 310
Carmel, IN  46032
*Attorney for Plaintiff*

JOHN C. TRIMBLE

LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Telephone:     317-237-0500
Facsimile:     317-630-2790
jtrimble@lewiswagner.com

IN THE VIGO COUNTY SUPERIOR COURT 3

**FILED**

VIGO COUNTY SUPERIOR COURT

STATE OF INDIANA

APR 2 0 2017

*Bradly M./reason*
CLERK

| | | |
|---|---|---|
| STAPLES THE OFFICE SUPERSTORE EAST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CAUSE NO.:  84D03-1703-PL-002478 |
| | ) | |
| v. | ) | |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY  and  JAMES B. BOGARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR ENLARGEMENT OF TIME

Comes now the Defendant Zurich American Insurance Company, by counsel, and moves the Court for an enlargement of time of thirty (30) days in which to answer or otherwise respond to Plaintiff's Complaint, up to and including, and in support thereof would show the Court as follows:

1.  That a response is due on or about April 30, 2017, and said time has not expired.

2.  That no prior enlargements of time have been requested.

3.  That said additional time is necessary to enable counsel to confer with his client, to review the facts and prepare an appropriate response.

WHEREFORE, Defendant Zurich American Insurance Company prays for an additional thirty (30) days in which to answer or otherwise respond to Plaintiff's Complaint, through and including May 30, 2017, and for all other just and proper relief in the premises.

LEWIS WAGNER, LLP

By: _____

JOHN C. TRIMBLE, #1791-49
MEGHAN E. RUESCH, #32473-49
*Counsel for Defendant Zurich American
Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing upon all counsel of record, as follows, by first class U.S. mail, postage prepaid, on this 18th day of April, 2017:

Randall W. Graff
KOPKA PINKUS DOLIN PC
550 Congressional Blvd.
Suite 310
Carmel, IN 46032
*Attorney for Plaintiff*

_____
JOHN C. TRIMBLE

LEWIS WAGNER, LLP
Suite 200
501 Indiana Avenue
Indianapolis, IN 46202
Telephone:    317-237-0500
Facsimile:    317-630-2790
jtrimble@lewiswagner.com

{0008700/0594/01081752.v1}

IN THE VIGO COUNTY SUPERIOR COURT 3

STATE OF INDIANA

| | |
|---|---|
| STAPLES THE OFFICE SUPERSTORE EAST, INC., | ) ) ) |
| Plaintiff, | ) CAUSE NO.: 84D03-1703-PL-002478 ) |
| v. | ) ) |
| ZURICH AMERICAN INSURANCE COMPANY and JAMES B. BOGARD, | ) ) ) |
| Defendants. | ) |

## ORDER

This matter came before the Court on the Motion for Enlargement of Time in which to respond to Plaintiff Complaint filed herein by Zurich American Insurance Company.

And the Court, being duly advised, now grants said Motion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Zurich American Insurance Comopany is granted a period of time through and including May 30, 2017, in which to answer or otherwise respond to Plaintiff's Complaint.

_____
JUDGE, VIGO SUPERIOR COURT



PD

DISTRIBUTION TO:

John C. Trimble/Meghan R. Ruesch
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN  46202

Randall W. Graff
KOPKA PINKUS DOLIN PC
550 Congressional Blvd.
Suite 310
Carmel, IN  46032

{0008700/0594/01081752 v1}